May it please the court, my name is Christopher Leach and I represent the appellant Cristina Cruz. The district court in this case committed errors of law when it dismissed Ms. Cruz's claims based on the defendant's affirmative defenses under the statute of limitations. They erroneously dismissed claims under the Trafficking Victims Protection Act by refusing to apply a tenure statute of limitation under current law then in effect and dismissed Ms. Cruz's claims under the FLSA, the Fair Labor Standards Act and state law breach of contract by refusing to credit Ms. Cruz's credible allegations warranting equitable tolling. I'd like to address the Trafficking Victims Protection Act first, Your Honor. Now the district court misapplied the land graph retroactivity analysis in this case when it refused to apply the tenure limitation period to Ms. Cruz's unexpired claims under the Trafficking Victims Protection Act. In 2008 Congress extended the limitations period from four years to ten years because in the legislative history Congress recognized that the tenure period was necessary to give trafficking victims a more realistic time period to file their claims. Now the district court in this case refused to apply the longer period and instead applied the shorter period because it found no congressional intent to apply the longer limitations period. That was incorrect because under the land graph analysis congressional intent is not the relevant standard when the statute in question does not have an impermissible retroactive effect. Now just getting to the land graph test since that's the main standard in this case, there are three steps to approaching a statute regarding pre-enactment conduct. The first is whether or not the statute itself explicitly states the temporal reach of the statute. The second is whether or not the statute in question has an impermissible retroactive effect and that for our case is the key standard. And then if there is no, if there is an impermissible retroactive effect only then do you look to congressional intent. So just applying these factors to the case right here, Your Honor, the statute in question, the 2008 extension statute does not have any language in the statute regarding the temporal reach of the statute. And because of that then we have to look to the next step in the land graph analysis. Sorry, Your Honor. The next step in the land graph analysis which is whether there's an impermissible retroactive effect. And this court and the Supreme Court has explained that an impermissible retroactive effect is one that attaches new consequences to past conduct. And that is most often seen in the context of the ex post facto clause where a legislature attempts to criminalize conduct that had already occurred. Now in the context of the statute of limitations, Your Honor, the key ingredient is whether or not the claim had expired at the time that the statute of limitations extension took effect. Because if you think in terms of new consequences, on the day before the limitations effect took effect the defendants were liable to the same exact extent as they were the day after the limitations period was extended. The only difference being that they are liable for a longer period of time. And this court has explained that that is not an issue, at least in the ex post facto context, albeit in an unpublished decision in the United States versus Markham. But the Supreme Court has reiterated that standard in the Stogner case where in addressing an extended limitations period as to an unexpired claim, the court said very clearly that this holding does not affect any attempts to extend the statute of limitations to an unexpired claim. And the reason for this, Your Honor, is simple, that both times prior, before and after the limitations period took effect, the defendant was never free from pursuit and always had the same incentives to keep records of their innocence or do any of the things to preserve their evidence of innocence should a claim arise later. Now applying that standard to our case, Your Honor, Ms. Cruz's claims had not yet expired by the time the TVPA amendments took effect in 2008. If we look at the timeline of the case, Ms. Cruz was brought to the United States in 2002 and she escaped on January 17, 2008. And our contention is that all of her claims accrued, none of all of her claims accrued on the date, at the very latest, I'm sorry, at the very earliest on the date she escaped on January 17, 2008, either under a tolling theory or under a continuing violation theory. And so because all of the claims, all of the claims had accrued on January 17, 2008, she had four years from that date to file suit. But because Congress extended the statute of limitations in 2008 after Ms. Cruz's claims accrued, that meant that she then was able to benefit from the 10-year statute of limitations. The district court dismissed her claims and refused to apply that standard. And at the very least, this court should reverse on the TVPA issue for that. Now there are other claims we have, Your Honor, under the Fair Labor Standards Act. Oh, I'm sorry, I wanted to address first the appellee's only real contention under the TVPA, Your Honor. The appellee's only contention with respect to application of the extended limitations period is that some section of the 2008 amendments included an effective date provision saying that the statute would apply 180 days after the statute took effect. And I think as we explained in our brief, that does not apply to this case for two reasons. First is that the effective date provision that the appellee's cite does not actually apply to Title II of the 2008 amendments. And second, that even if it did apply, that's not the type of language that the Supreme Court has said actually dictates the statute's temporal reach. So if the Court has no questions about that, I'll proceed to the Fair Labor Standards Act and contract claims for the equitable tolling arguments. Now Ms. Cruz brought two variants of an equitable tolling argument in this case. One that I'd like to address first is with respect to the Fair Labor Standards Act claims. The district court erred by dismissing her claims because it refused to apply the Vance v. Whirlpool actual notice standard to Ms. Cruz's claims. Under Department of Labor regulations, the appellees as employers were obligated to provide and post a notice alerting Ms. Cruz to her right to a minimum wage. They did not do that and our complaint is clear that Ms. Cruz had no notice of those rights under the law. And as a result, at least under the Vance standard that this court, this court, the Vance test that this court laid out, Ms. Cruz's claims under the FLSA tolled until she received actual notice of her rights under the FLSA or when she first acquired an attorney. And at that period, the record right here would not allow the district court to conclude that Ms. Cruz acquired actual notice of her claims. The record right here is unclear as to when Ms. Cruz acquired actual notice, and so the district court thus could not dismiss Ms. Cruz's complaint based on the affirmative defenses that the appellees raised here. What's the statute of limitations? The statute of limitations for the Fair Labor Standards Act is three years, Your Honor, because we elect— No, no, that's the affirmative defense they raised. The defendants have raised the affirmative defense of a statute of limitations. Yes, Your Honor. They raised the affirmative defense of a statute of limitations. And the reason why we—because right here, the key, Your Honor, is that this was raised on a motion to dismiss. And so this court's case law is very clear that a district court cannot dismiss a claim on a motion to dismiss unless on the four corners of the complaint, the district court has everything it needs to dismiss the complaint. Right here, what we had, Your Honor, under the Vance v. Whirlpool standard, is evidence that Ms. Cruz was isolated in the United States and did not know her rights to a minimum wage. There also is no evidence in the complaint that the appellants ever provided Ms. Cruz with the requisite notices to alert her to her right to a minimum wage. And so under the Vance v. Whirlpool standard, this court cannot—the district court could not dismiss Ms. Cruz's complaint based solely on the statute of limitations, particularly without having any factual record before it. And that's—in the context of these equitable tolling arguments, Your Honor, that's the key fault the district court had, Your Honor, is that it dismissed solely on the pleadings based on affirmative defense without a factual record behind it. So that most of the cases that—if we turn to the sort of standard equitable tolling argument, the extraordinary circumstances put forward by the defendants that prohibited this— Let me ask you a question first. Does she have to allege, though, in her pleadings that she remained unaware? I mean, you said Ms. Cruz was unaware that defendants paid her a small fraction of the minimum wage required. Okay, but I don't see anything in her pleadings to say that this lack of knowledge persisted throughout the period before filing the complaint. Your Honor, there is— And the question is, do you need to allege that in the complaint? And if not, why not? No, we did not need to have that specific allegation in the complaint. Why not? Because we are not—we have no— The statute of limitations is an affirmative defense on the defendant's behalf. And under this Court's case law, we have no obligation whatsoever to anticipate their affirmative defenses. If the district court was inclined to disagree with that and believe that we needed to plead additional facts, then the proper course, at the very least, would have been to dismiss without prejudice and allow us to submit an amended complaint. I guess from my perspective, I'm just wondering whether this is entirely statute of limitations oriented or whether it's part of your claim. In other words, say that she never received notice. And does this complaint say she never received notice? The complaint, Your Honor, says that she was not—the complaint, Your Honor— I believe it's a paragraph— says that when she began her employment, she did not know that she received her— It says, at this time, Ms. Cruz did not know that United States law required a significantly higher minimum wage. And so do we need—you're saying there doesn't need to be an allegation that she remained in the dark, essentially. No, Your Honor. There doesn't need to be an allegation that she remained in the dark. If the district court was inclined to credit these allegations—and keep in mind, Your Honor, the district court did not address our advance argument whatsoever. So it's unclear whether the district court ever considered this aspect of our equitable tolling argument. So we had no obligation to plead that in the complaint because to do so would have essentially required us to anticipate their statute of limitations defense and then plead around that. And that's not what the rule of this circuit said. I thought most of these—I may be incorrect here, but I thought in most cases that this issue comes up because you get the ruling, you have permission to file an amended complaint to supply the missing factual information. The amended complaint is—your permission to file is denied. You haven't asked for an amended complaint. Your Honor, we did not ask for permission after the ruling came out because the district court dismissed with prejudice. If you see the timeline of the case, I believe it's either the day after the same day, had the memorandum of opinion dismissing the complaint and then filed the Rule 58 judgment dismissing with prejudice. So under those circumstances, Your Honor, the district court made very clear that that was its final ruling  because as I explained to Judge Keenan, we had no obligation to plead around this affirmative defense in this circumstance. So we're going to the—and just leading from that to the larger, the extraordinary circumstances, equitable tolling, Your Honor. The complaint is very clear as to the grounds for her extraordinary circumstances. That is a tough sell in Virginia. You have to acknowledge that. And you may have gotten a bad drawing that you have three Virginia judges who know the law in Virginia. Virginia's hostile to equitable tolling. I mean, totally hostile. You have to acknowledge that, don't you? Well, Your Honor, I don't acknowledge that the standard that the Virginia Supreme Court has applied and the actual, the law itself, there's a specific standard for breach of contract cases that says that if the defendant puts up an impediment to filing suit, then that is the equitable tolling standard. And then the Walker, the 2005 Walker case says that that impediment may be direct or indirect. And so on the facts— Judge Keenan and I both sat on that case. On the Walker? I'm sorry, Your Honor, which case? On the Virginia Supreme Court. We both sat on that case. You both sat on that case? I did not know that, Your Honor. I apologize. Learn something new every day. Well, if Your Honor's disinclined to extend the statute of limitations for the Virginia statute— I just think that's a particularly tough sell for you. Well, under your argument, it seems like to me, if we have a contract, and you think the contract's breached, and you say, all right, I'm going to sue you under the contract. And I say, fine, go ahead. I'm now going to file a counterclaim. I'm going to sue you for twice as much. It seems like to me, under the way you've made your argument, that that suffices to toll because you're put in fear now because you're now going to have a counterclaim filed against you. Your Honor, that might be a circumstance that would not warrant a tolling in that circumstance. But right here, we do not have that type of circumstance here. The type of— You're saying the fear here, though, is fear that the law would be enforced. How can that be a basis for equitable tolling under Virginia law, a threat to bring the law down on you for somebody who was violating the law? Well, it's not a threat to bring down the law, Your Honor. It's a threat to improperly use the law. Mrs. Cruz's visa— I'm sorry, Your Honor. No, and I appreciate that. Essentially, this employer—I mean, there's some real problems here. No question. But what I'm saying, though, in terms of the equitable tolling, the threat here was I'm going to use the law against you. Well, why can't you report somebody? You can do it. It's certainly legal to do it. You're saying that it was just another sign of their bad faith or whatever. But if you're calling the authorities to report a violation of the law, I don't see how under Virginia law that can be a basis for equitable tolling. Well, Your Honor, first— There has to be some fraud, some kind of deceit, something—not just ill will. And here it seems to me all you have, in terms of the state law issues, is ill will, general ill will, plus an enforcement of a law. Well, Your Honor, I'll just raise two if my time has expired. May I answer? Yes. There's two answers, Your Honor. First, the enforcement of the law point, this is a clear misuse. This is essentially—the TVPA has one of its— No question, but we're talking about a contract. I know, Your Honor, but your question is whether or not the mere threat to enforce the law is sufficient coercion to prevent— To constitute a basis for equitable tolling of a contract claim under Virginia law. So, Your Honor, I take your point that the Court is skeptical about that. Our brief is clear as to what our theory of that is. But if this Court is disinclined to apply this to the breach of contract claim, at the very least, that's a basis under the standard federal equitable tolling argument. The facts of that are clear in our complaint, and the District Court made an error of law by dismissing the complaint without giving Ms. Cruz the opportunity to take discovery or to, at the very least, amend her complaint. I'll reserve the balance of my time. Thank you. Mr. Battle? Thank you. Good morning. I'm Timothy Battle, and I represent the Appalese here, Nilda Maipa, Michelle Barba, and Ferdinand Barba. The question for review is where Ms. Cruz, the plaintiff, reportedly escaped from the defendants, my clients, on January 17, 2008, with the assistance of a friend and another person, but nevertheless waited five and one-half years until July 16, 2013, to commence this action. Did the District Court correctly rule that all of Ms. Cruz's claims are barred by the applicable statute of limitations? We contend the District Court, United States Judge Claude Hilton in the Eastern District in Alexandria, did indeed make the right decision on all three claims, which are there are two traffic TVPA claims, also the Fair Labor Standards Act and a breach of contract under the state law. We contend that they're correct on all three. The standard of review for this appellate panel for the statute of limitations is de novo, since Judge Hilton granted a motion to dismiss. However, if we get to the equitable tolling issue, that is an abuse of discretion standard. As to the first, the TVPA claim, where the statute of limitations changed from four years to ten years, because Ms. Cruz's causes of action accrued no later than January 17, 2008, when she left the home in Clifton, Virginia, her TVPA claims are time-barred unless the amendment in the 2008 Act, adding the ten-year statute of limitations, Section 1595, applies retroactively. And then we get into the Landgraf analysis, the United States Supreme Court case from 1994. And Judge Hilton, in his nine-page opinion, started addressing that at page five. He did indeed include the Landgraf analysis in his opinion and addressed those elements. He indeed specifically ruled that under the Landgraf analysis, there was not a basis to give the ten-year statute retroactive effect. Well, where is the impermissible retroactive effect in this case? I mean, the statute of limitations was still alive. I mean, the claim was alive. Excuse me. When the statute of limitations was extended. So it's not like they were breathing new life into a dead claim. No. So what is the impermissible retroactive effect? The impermissible retroactive effect is cited at page 11 of the brief. While the effect is particularly prevalent in the context of claims that have already expired, there's no question that extending the statute of limitations retroactively increased a defendant's liability for past conduct. And there's a citation to Landgraf at page 280, by increasing the period of time during which a defendant can be sued, even in cases where the claims had not expired at the time the limitations period was extended. And there's a citation to the Enter Mortgage Acceptance case. Under that argument, you would never have a situation where the statute of limitations could be extended while the existing statute of limitations was still running. That seems to be not an infrequent occurrence. In Judge Agee, it certainly could be perhaps extended too far, but in this case it certainly is a significant event that three individuals would face liability for an extra six years under the TVPA with all of the attorney's fees and damages and the extensive language of that. But the time at which to bring the claim is the only difference between the older statute of limitations and the newer statute of limitations. That is correct. That is correct. And the other, while it may not be clear, it is certainly arguable that the 2008 Act specifically provided this title and the amendments made by this title shall take effect 180 days after the date of the enactment of this Act. And one of those amendments to this title was the amendment changing the civil action statute of limitations from four to ten years. Members of the panel, it is interesting that in the extensive research done by both sides in this case, it appears, although counsel for appellant says that every court facing this issue, other than the district court of course, Judge Hilton, has applied the ten-year limitations period to unexpired claims. But there's only two citations to district court cases. None of those is binding on this court and it appears that none of the U.S. Courts of Appeal have spoken on this issue. It appears to be a matter of first impression. Do you think this is the case where we ought to find another one? Under the circumstances of this case, yes, sir. But there was no increase in liability and isn't that what Baldwin talks about? This is a mere extension of the liability period. Judge Keenan, it is clear that the exposure was now present for six additional years. It is not as clear as making something illegal that had never been illegal before and applying it retroactively. That is clear on the record. What's your best case supporting you that deals with this? It doesn't have to be under this statute, but there are lots of statute limitations that get extended. What's your best case that supports your argument? Your Honor, I... There is a district court case cited in this brief that came... You got any federal court of appeals or state supreme court cases that might do? I don't believe so. Well, tell us what the new legal consequence is. It seems to me when you have, under the language of Baldwin, it seems to me when you have an extension of the statute of limitations, you have an extension of the same legal consequence. It's not a new legal consequence like breathing life into a dead claim. So how do you fit your case into the concept of a new legal consequence which is required for an impermissible retroactive effect? Your Honor, the citation before to the... would be the 391 F. 3rd at 410 Enter, a Second Circuit case. And it is... about the burden of extending the statute of limitations. But Your Honor is correct, that is all there is. There is not something that became improper as a result of this that is simply an extension of the... from 4 years to 10 years. Also, I would draw the panel's attention to, in Judge Hilton's opinion, beginning on page 5, it's a 9-page opinion, pages 5 and 6, he does go through this analysis, I believe, in a careful fashion and come down with the indication that it is not retroactive. I'd like to move on, please, to the second... we have two more issues to address here. And the next is the Fair Labor Standards Act. And the Fair Labor Standards Act is a much shorter part of the brief because we think it is much clearer and quite definite. And that is that the District Court correctly concluded that Ms. Crewe's claim under the FLSA is barred under a 3-year statute of limitations. And there's a citation to Section 255, and whether it is 2 years or 3 years, if it is a willful violation, it becomes 3 years. But either way, they are simply... they're simply barred by the very hard dates we have here. One of the reasons that allowed Judge Hilton to dismiss this on the statute of limitations, and it's a lengthy complaint, is that we have some very definite, very hard dates here. The three contracts involved began January 17, 2002, 2002, 2004, 2005. The leaving the home, the escape, was January 17, 2008, only 6 weeks before that last contract was about to end. And that's a very definite date. It's not a sometime in this year, sometime in this period. On January 17, 2008, she left the home. And July 16, 2013 is an equally definite date when they filed suit in federal court. Under the Federal Labor Standards Act, there is some question, which we've addressed in the brief, whether it's willful by simply coming up with easy, but whether it's a willful violation, which is 3 years, or whether it is a 2-year statute of limitations, it's clearly late. The next item... Counsel, what do you think the rule is? It's a garden variety situation. Plaintiff files a complaint. Defendant comes in on 12B6 motion and says, I have an affirmative defense statute of limitations. Is the plaintiff entitled to discovery without anything more? Or what's the rule in that situation? It happens all the time. The case law is, if there are contested facts that may affect that decision, and it is too early to make that decision,  with the contested facts. But in this case, when you have someone who absolutely, definitely left in 2008, January 17, 2008, then that's it. That is, there's no need for... There is no need to... There is a case I'll get to in a moment on the equitable tolling argument that says the court does not have to... The court does not have to... Is the plaintiff correct that the plaintiff does not have to anticipate an affirmative defense of the statute of limitations when filing a plea? Judge Agee, the standard is, and this is in the joint appendix at 112 and 115, Right, but if she's entitled to actual notice once there's a failure to post notice, then facts could make a difference, couldn't they? If she remained without knowledge of her rights under the minimum wage laws, then that fact could be developed in discovery, could it not? Your Honor, there, I believe, potentially, I can't say it's impossible, but it certainly is not likely in this case, and in particular, we've addressed that, because there is a large amount of case law on the... The appellant has raised the failure to notice, failure to post the minimum wage poster, and we've addressed that. One issue is that all the people involved here, my three clients and the plaintiff, are from the Philippines, and they spoke variations of the Philippine language, so if, and I'm not, that sign is not even available in the Philippine language, but in particular, there is a great deal of... On that theory, she'd never get notice. Right, Your Honor, but in the... Your Honor, there is a great deal of case law that indicates that the failure to post a notice informing its employees of their rights under the FLSA without more does not suffice to invoke the doctrine of equitable tolling, and there is, it's cited on page 25 and 26 of the brief, there is a large number of cases, and then, and in particular, there's two decisions from the United States Court of Appeals for the Sixth Circuit, which indicate that the doctrine of equitable tolling does not save the plaintiff's claims where the employer fails to post the required Department of Labor notice of employees' rights under the FLSA. Your Honor, this is contrary to the TVPA issue, which appears to be a matter of first impression for the United States Courts of Appeals, and for this court, the Sixth Circuit has spoken on that one. Your Honor, members of the panel, moving toward the breach of contract claim, that, again, I think is even easier, and that one is that there are three contracts here. One is in 2002, one is in 2004, and one is in 2005, and the last contract was due to expire six weeks after Ms. Cruz left the home, only six weeks later. She was caring for an infant who was about to start first grade. That was her main duty. So the statute of limitations on the breach of contract action, it's not, it begins on those contracts, March 2002, January 2004, and February 2005, and it is, that is, and Judge Hilton's opinion properly expresses that it is not, as Counsel for Appellant contends, that everything started on January 17, 2008, when she left the premises. In conclusion, we believe that the district court correctly ruled on all three statutes of limitations, and in summary, that the TVPA should not have, the 10-year statute of limitations should not have retroactive effect, and that the four-year statute of limitations should apply. Two, that the Fair Labor Standards Act, even much clearer, much simpler matter, is barred under a three-year statute of limitations. Also, that the doctrine of equitable tolling does not save either of these items. And finally, that the breach of contract claim goes to the three contracts, 2002, 2004, and 2005, and that also is clear that the statute of limitations bars these claims. We ask that this panel affirm the decision by the United States District Court in Alexandria in its entirety, and in the event that there is any problem with any of those elements, we ask that there be attention to the TVPA, the Fair Labor Standards Act, and the state claim for breach of contract separately, because those other two are extremely clear. Thank you for your time. Thank you, Mr. Battle and Mr. Leach. May it please the Court. I'd just like to address a couple points, four points that were brought up in Mr. Battle's argument. First, regarding the effective date of the TVPA, as we made clear in our brief, that effective date provision that Mr. Battle cites was contained in Title IV of the Reauthorization Act of 2005, and when it says this title and the amendments made by this title referred to Title IV of that statute, not Title II. So the effective date provision, even if it mattered, could have no application here. Second, regarding the impermissible retroactive effect, which is something that Judge Keenan discussed with Mr. Battle quite frequently, under Landgraf, the key analysis here for our case is that it is not impermissibly retroactive simply because a statute, quote, upsets settled expectations. The only impermissible retroactive effect is where it changes the definition of a crime or creates new consequences for past conduct. That's the only impermissible retroactive effect here, and as Judge Agee noted, the statute of limitations is not, extending a statute of limitations where a claim is not expired does not do that. Now, turning to the FLSA point, Mr. Battle, on the other side, noted that when subject to Judge Keenan's questioning that there could be a series of facts that show that Ms. Thetmire-Klein did not receive actual notice of her claim up to the window where the statute of limitations took effect. Just to give Your Honor a timeline here, the statute of limitations is three years for these claims, and that's very clear because we've alleged a willful violation. So we only need, from the date of her escape, of January 17, 2008, the statute of limitations only needs to toll for two and a half years until July of 2010, because then that triggers the three-year window to raise the claim. During that time period, the other side has essentially conceded that it is possible that there are a set of facts that discovery could produce that show that Ms. Cruz did not have actual notice of her rights under the FLSA. And under that standard, the district court could not have dismissed my client's complaint based solely on the record on a motion to dismiss. And the last point I want to raise is with respect to the language of the TVPA flyers, something Mr. Battle raised in his brief, and we discussed in our reply brief. Ms. Cruz's native language is Talagang. I apologize if I'm mispronouncing it, but that is the native language of where she comes from in the Philippines, but she also does have limited English proficiency, and the poster that the Department of Labor requires be posted is very clear, and all it says is... not all it says, but the key language is $7.25 or whatever the relevant minimum wage was. It says $7.25 per hour, and that's something that if we take all facts in Ms. Cruz's favor in the complaint, something that she could understand. And so for those reasons, Your Honor, unless this court has further questions, I'd like to ask this court to reverse the district court's decision on the TVPA claims, the FLSA claims, and the state breach of contract claims. Thank you very much. We'll come down to Greek Council and proceed to our last case.
judges: Roger L. Gregory, G. Steven Agee, Barbara Milano Keenan